IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| ROYCE WILLIAM TAWATER,  §<br>Petitioner,  §<br>  §<br>v.  §<br>  §<br>  §<br>LORIE DAVIS-DIRECTOR TDCJ-CID,  §<br>Respondent.  § | No. 3:18-cv-02582-G (BT) |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Royce Tawater, a Texas prisoner, filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254. For the following reasons, the Court should dismiss the petition as barred by limitations.

I.

Based on events that occurred in July 2013, Petitioner was charged in four separate indictments with unlawful possession of a firearm by a felon, two counts of aggravated assault with a deadly weapon, and deadly conduct. He had two trials and is currently in custody pursuant to three separate judgments. *State of Texas v. Royce William Tawater*, Cause Nos. 29503, 29310, and 29311 (354th Dist. Ct., Hunt County, Tex.). At his first trial, Petitioner was convicted of unlawful possession of a firearm by a felon and was sentenced to twenty years in prison. At his second trial, Petitioner was

1

convicted on one count of aggravated assault with a deadly weapon and deadly conduct. On April 29, 2014, the court sentenced Petitioner to thirty-four years on the assault charge, and twenty years on the deadly conduct charge, with all the sentences from his three convictions to run concurrently.

On December 10, 2014, the Sixth District Court of Appeals affirmed Petitioner's conviction for unlawful possession of a firearm. *Tawater v. State*, No. 06-14-00075-CR, 2014 WL 6977070 (Tex. App.—Texarkana Dec. 10, 2014, pet. ref'd). Later, on February 4, 2015, the court also affirmed Petitioner's aggravated assault with a deadly weapon and deadly conduct convictions. *Tawater v. State*, No. 06-14-00094-CR, 2015 WL 457866 (Tex. App.—Texarkana Feb. 4, 2015, pet. ref'd); *Tawater v. State*, No. 06-14-00095-CR, 2015 WL 457911 (Tex. App.—Texarkana Feb. 4, 2015, pet. ref'd). On April 29, 2015, the Court of Criminal Appeals refused discretionary review of those convictions. *Tawater v. State*, Nos. PD-0253-15 and PD-0254-15. And on May 13, 2015, the Court of Criminal Appeals similarly refused discretionary review of Petitioner's conviction for unlawful possession of a firearm. *Tawater v. State*, No. PD-0004-15.

On August 3, 2016, Petitioner filed state habeas applications challenging his convictions, *Ex parte Tawater*, Nos. 81,984-02, -03, -04, which the Court of Criminal Appeals denied without written order on April

5, 2017. On September 21, 2018, Petitioner filed the instant § 2254 petition, in which he argues:

1. the jury did not make factual determinations using the reasonable doubt standard;

2. trial counsel rendered ineffective assistance by failing to seek a competency evaluation;

3. the jury instructions were incorrect;

4. he was incompetent to stand trial;

5. the State illegally enhanced his sentences; and

6. new evidence shows that DNA on the gun was matched to another person.

On February 28, 2019, Respondent filed an answer arguing, *inter alia*, that the petition is barred by the statute of limitations. On May 15, 2019, Petitioner filed a reply. The issues are fully briefed, and the matter is ripe for determination.

II.

The following factual background is taken from the appellate decision.

> Tawater, McCrary's friend of several years, came by McCrary's home the morning of July 1, 2013. McCrary reported that Tawater was in a bad mood. McCrary, who admitted to being a dealer of illegal drugs, believed Tawater was under the influence of drugs. Tawater showed McCrary a pistol, which Tawater said he was "trying to get rid of"; McCrary took this as an offer to sell the gun and asked how

3

much Tawater wanted. Instead, Tawater said he would keep the gun, which he "might need."

Later that day, Tawater returned to McCrary's home, looking for one of the people that lived with McCrary. McCrary said Tawater intended to fight this third person, but that he tried to talk Tawater out of this confrontation. This led to an argument between McCrary and Tawater, who then pulled a pistol,[2] the same gun Tawater had displayed earlier in the day. Tawater fired at McCrary, who ran around the house. Tawater pursued him and fired more shots at him. At some point, McCrary stopped in front of a house where some people asked if he was all right. Then Tawater ran past McCrary, and McCrary saw that Tawater no longer had the gun. Soon thereafter, police arrived on the scene.

McCrary admitted that he had sold illegal drugs, that he had multiple convictions (some for drug charges), and that he was under indictment for aggravated robbery. McCrary also felt he was taking a risk by testifying at Tawater's trial.

Joe Vega testified that he saw McCrary and Tawater's argument outside his (Vega's) home. Vega heard gunshots and came out to the porch where he saw Tawater, first, waving a pistol and, then, throwing it over a fence. Vega's brother, Manuel, also witnessed part of the argument and saw Tawater throw something over the fence.

When police arrived, both Vega brothers indicated where they had seen Tawater throw something and that it may have been a gun. Police eventually found a disassembled .22 caliber revolver in the bushes where witnesses indicated. On his person, Tawater had a box with thirty-eight .22 caliber rounds, and two other bullets loose in another pocket; he also

4

wore an empty shoulder holster. The spent rounds in the revolver, and at least two shell casings found in the street where the argument had been, all showed to have been fired from the pistol police found in the bushes. Officers were also hailed by a Hispanic man in the area who produced a spent bullet, which he said had come through at least one of his walls and hit him in his home.[3] This bullet was fired from a .22 caliber weapon, but due to deformities and damage to the bullet, it could not conclusively be said to have been fired from the revolver recovered at the scene.

Tawater was arrested at the scene for possession of drug paraphernalia. In the few hours after this, Detective Jamie Fuller swabbed Tawater's hands for gunshot residue. Tawater told Fuller that, earlier in the morning, he had fired a .22 rifle, so he might have residue on his hands.[4] Fuller took the swabs about 7:00 p.m., and Tawater said he had fired this rifle "early" that morning. The State, though, presented testimony from David Spence, a firearms expert for the Southwestern Institute of Forensic Sciences, who said it was "unlikely" gunshot residue would stay on a person's hands eight-to-nine hours after firing a weapon. Spence testified that sufficient particles of the relevant chemicals were found on the palms and back of both of Tawater's hands consistent with the presence of gunshot residue.

While Tawater did not testify, in the recorded interview played by the State, he denied having a gun during the confrontation with McCrary. Tawater stated that McCrary and others had guns and chased him, because a drug dealer named "Big" had unfairly put "a hit" on Tawater. Tawater stated that McCrary chased him on foot, but that two other men got in a gold Chevrolet SUV and chased Tawater.
In his defensive case, Tawater called one witness, Jason Cooke,[5] who said he had been on his brother's

5

porch with McCrary and a few other people when Tawater was seen walking up the street. According to Cooke, McCrary offered Cooke $50.00 to go "whup" Tawater or "try to lay him out." Cooke declined this offer and went in the house. When Cooke looked outside, he said Tawater was surrounded by McCrary and two other men. A short time later, while inside, Cooke said he heard gunshots and saw McCrary chasing Tawater. Cooke said he never saw Tawater with a gun. He also said he saw some men get in a gold Chevrolet Blazer and chase a running Tawater. Cooke said that the police never contacted him as a witness and that his trial testimony was the first time he had presented his view of events.

Tawater offered no objection when the State introduced a judgment of conviction dated January 9, 2013, for the offense of burglary of a building. *See* TEX. PENAL CODE ANN. § 30.02(a), (c)(1) (West 2011) (state jail felony). Nowhere in cross-examining the State's witnesses or presentation of his defense did Tawater challenge his status as a convicted felon. Near the end of a recorded interview with Detective Fuller, Tawater admitted, "I'm a felon." In closing arguments, Tawater's counsel said, "You know my client is a felon. Mr. Tawater is a felon. The evidence is in—it's in the packet."

\* \* \* \*

2 McCrary admitted he was "high on Xanax" during the altercation.

3 Vincente Paulin, the man hit by the stray bullet, testified through an interpreter. He said he was in his home, heard an explosion, and realized he was hurt and bleeding (photographs were introduced of wounds to the side of his chest and inside his elbow). He said he looked down and saw a piece of metal,

6

> which his brother-in-law said was a piece of bullet. Paulin said he gave this bullet to police. However, the police who met with Paulin at the scene said they saw him pull the bullet from his side.
>
> 4 Tawater's interview with Fuller was presented in a video-recorded exhibit that was played for the jury.
>
> 5 Under cross-examination, Cooke told the State he was "Big J," but denied having put a hit on Tawater.

*Tawater*, 2014 WL 6977070 at *2-4.

### III.

### A.  Statute of Limitations

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") which governs the present petition establishes a one-year statute of limitations for federal habeas proceedings. *See* Antiterrorism and Effective Death Penalty Act, Pub.L. 104-132, 110 Stat. 1214 (1996). In most cases, the limitations period begins to run when the judgment becomes final after direct appeal or the time for seeking such review has expired. 28 U.S.C. § 2244(d)(1)(A).[1]

---

[1]The statute provides that the limitations period shall run from the latest of--

> (A)  the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking direct review;
>
> (B)  the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

7

### (1) Aggravated Assault and Deadly Conduct Convictions

On April 29, 2015, the Court of Criminal Appeals refused the petitions for discretionary review of Petitioner's aggravated assault with a deadly weapon and deadly conduct convictions. The convictions became final ninety days later, on July 28, 2015. *See* Sup. Ct. R. 13; *see also Roberts v. Cockrell* 319 F.3d 690, 694-95 (5th Cir. 2003) (state conviction becomes final for limitations purposes when time for seeking further direct review expires regardless of when mandate issues). Petitioner then had one year, or until July 28, 2016, to file his federal petition.

The filing of a state petition for habeas corpus tolls the statute of limitations. *See* 28 U.S.C. § 2244 (d)(2). Petitioner filed his state habeas petitions on August 3, 2016. These petitions were filed after the AEDPA limitations period expired. The petitions therefore did not toll the limitations period.

---

(C)   the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D)   the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

Petitioner was required to file his § 2254 claims by July 28, 2016. He did not file these claims until September 21, 2018. The claims are therefore untimely.

### (2) Unlawful Possession of a Firearm

On May 13, 2015, the Court of Criminal Appeals refused Petitioner's petition for discretionary review of his unlawful possession of a firearm conviction. The conviction became final ninety days later on August 11, 2015. *See* Sup. Ct. R. 13. Petitioner then had one year, or until August 11, 2016, to file his federal petition.

On August 3, 2016, Petitioner filed a state habeas petition challenging this conviction. The habeas petition tolled the limitations period while it was pending—from August 3, 2016 until April 5, 2017, or 246 days. Petitioner was required to file his § 2254 claims by April 13, 2017. He did not file his petition until September 21, 2018. His claims are therefore untimely.

### B.   Equitable Tolling

The one-year limitation period is subject to equitable tolling in "rare and exceptional cases." *Davis v. Johnson*, 158 F.3d 806, 811 (5th Cir. 1998); *see also Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir. 1999) (asserting that courts must "examine each case on its facts to determine whether it presents sufficiently 'rare and exceptional circumstances' to justify equitable tolling'

9

(quoting *Davis*, 158 F.3d at 811)). The Fifth Circuit has held that "'[e]quitable tolling applies principally where the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights.'" *Coleman v. Johnson*, 184 F.3d 398, 402 (5th Cir.1999) (quoting *Rashidi v. American President Lines*, 96 F.3d 124, 128 (5th Cir.1996)). Petitioner bears the burden of proof to show he is entitled to equitable tolling. *Phillips v. Donnelly*, 216 F.3d 508, 511 (5th Cir. 2000).

Petitioner raises numerous claims for equitable tolling. He argues: (1) the State concealed information; (2) he could not afford counsel; (3) he was in administrative segregation for fifteen months; (4) he did not have the necessary documents and information to file his petition; (5) he was denied State appellate procedures; and (6) he was incompetent. But Petitioner does not explain what information the State allegedly concealed, or how this prevented his timely filing. He also does not explain how the lack of counsel prevented his timely filing. Although he states he was in administrative segregation for fifteen months, he does not say when he was in administrative segregation and has failed to show the fifteen months in administrative segregation encompassed the time during which the AEDPA limitations period was running. He states he did not have the necessary documents and information to file his habeas petition, but he does not explain what

documents and information he needed and why these documents and information were necessary to his timely filing a habeas petition. He also claims the appellate courts failed to properly apply the law and that the evidence at trial was conflicting. Petitioner, however, has failed to explain how this prevented him from timely filing his petition. Further, to the extent Petitioner claims he is entitled to equitable tolling due to his *pro se* status and his lack of legal knowledge, these claims do not entitle him to equitable tolling. *See Felder v. Johnson*, 204 F.3d 168, 171-72 (5th Cir. 2000) (finding ignorance of the law, lack of knowledge of filing deadlines, a prisoner's *pro se* status, and lack of legal training do not support equitable tolling of the AEDPA statute of limitations).

Petitioner also claims he was incompetent. "Although mental illness may warrant equitable tolling, a petitioner (i) must make a threshold showing of incompetence and (ii) must show that this incompetence affected his ability to file a timely habeas petitioner." *Jones v. Stephens*, 541 Fed. Appx. 499, 500 (5th Cir. 2013) (citations omitted). Here, Petitioner has failed to make a threshold showing of incompetence. To support his incompetence claim he submitted a document showing that on November 12, 2017, he was prescribed Trifluoperazine; on March 22, 2018, he was prescribed Diphenhydramine; and on June 21, 2018, he was prescribed Sertraline. (ECF No. 3 at 13.) The

11

document, however, does not make a threshold showing of incompetence. Further, the document shows Petitioner was not prescribed this medication until over year after the AEDPA limitations period expired. Petitioner has therefore made no showing that any mental condition existed during the AEDPA limitations period and that the mental condition prevented him from timely filing his petition.

Further, for equitable tolling to apply, the applicant must diligently pursue habeas corpus relief. *See Coleman,* 184 F.3d at 402. In this case, Petitioner did not file his state habeas petitions until almost one year after his convictions became final. After his state habeas petitions were denied, he then waited almost a year and a half before filing this § 2254 petition. Petitioner has failed to show he is entitled to equitable tolling.

### C. Actual Innocence

Petitioner argues he is actually innocent because he did not have possession of a gun. To support his claim, he submits new evidence that DNA found on the gun matched a third person.

The Supreme Court has held that "actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar, as it was in *Schlup* and *House*, or, as in this case, expiration of the statute of limitations." *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013).

A petitioner who claims actual innocence, however, "must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Id.* Petitioner has failed to meet this high standard.

Here, witness Joe Vega testified that he saw Petitioner with a gun chasing McCrary. (ECF No. 20-13 at 74). Vega stated McCrary was yelling and looked "kind of scared." (*Id.*) Vega stated he heard police sirens, and at that point Petitioner tried to put the gun in his pants or the holster he was wearing but was unable to do so. (*Id.* at 76.) Vega then saw Petitioner throw the gun over a fence into some bushes. (*Id.* at 76-77.) Vega told police officers where Petitioner threw the gun, and officers retrieved the gun. (*Id.* at 77-78.)

Joe Vega's brother, Manuel Vega, testified he saw Petitioner and McCrary yelling, and that McCrary said he was being shot. (*Id.* at 84-85.) Manuel Vega told police officers he saw Petitioner throw something over the fence and saw officers retrieve a gun from that area behind the fence. (*Id.* at 87.)

Officer Petrea testified he searched Petitioner at the scene and that Petitioner was wearing a gun holster, and that Petitioner had a box of .22 caliber bullets in one pocket and an additional bullet in another pocket. (*Id.* at 93-100.) An expert witness for the State testified that the shell casings found at the scene matched the gun police found in the bushes. (*Id.* at 180.)

13

Detective Fuller testified that the ammunition found in Petitioner's pockets matched the ammunition found in the gun. (ECF No. 20-14 at 14.) David Spence, the State's trace evidence expert, testified that Petitioner's hands tested positive for elements consistent with gunshot residue. (*Id.* at 25-26.) Although Petitioner told officers he shot a rifle the morning of the incident, Spence testified it was unlikely that gunshot residue from a shooting that morning would still be present when Petitioner's hands were tested by officers the evening of the shooting incident. (*Id.* at 28.) In light of this trial testimony, Petitioner's evidence that another person's DNA was on the gun is insufficient to show that it is more likely than not that no reasonable juror would have convicted him in light of this DNA evidence. Petitioner's actual innocence claim is therefore insufficient to excuse him from the statute of limitations.

## IV.

The petition for a writ of habeas corpus should be dismissed with prejudice as barred by the one-year limitation period. *See* 28 U.S.C. §2244(d).

Signed September 5, 2019.

_____
REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

14

## INSTRUCTIONS FOR SERVICE AND <u>NOTICE OF RIGHT TO OBJECT</u>

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n,* 79 F.3d 1415, 1417 (5th Cir. 1996).